UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
URIEL GERARDO LOZANO, SARAI CISNEROS,  :
and LAURA BAQUERO ALMEIDA,             :
                                       :
              Plaintiffs,              :     No. 26 Civ. 602
                                       :
        -against-                      :
                                       :     **COMPLAINT**
FRAGOLE ON COURT CORP. d/b/a FRAGOLE   :
RISTORANTE, VICTOR NAVARRETTE, and     :
VICTOR CLAUDIO WANG a/k/a CLAUDIO      :     **JURY DEMAND**
WANG,                                  :
                                       :
              Defendants.              :
------------------------------------------------------------------------ X

      Plaintiffs Uriel Gerardo Lozano, Sarai Cisneros, and Laura Baquero Almeida, by their attorneys Pechman Law Group PLLC, complaining of Defendants Fragole on Court Corp. d/b/a Fragole Ristorante ("Fragole"), Victor Navarrette, and Victor Claudio Wang a/k/a Claudio Wang (collectively, "Defendants"), alleges:

## NATURE OF THE ACTION

      1.     Plaintiffs worked just for tips as servers and bartenders at Fragole, an Italian restaurant in Brooklyn. By doing so, Defendants failed to compensate Plaintiffs at the statutorily required minimum wage rate, the required overtime rate for hours worked in excess of forty per workweek, and failed to pay Plaintiffs spread-of-hours pay. Defendants Navarette and Wang also unlawfully participated in the tip pool. Moreover, Defendants failed to provide Plaintiffs with wage notices upon their hire or wage statements that accurately reflected their hours worked and wages due per pay period.

      2.     Plaintiffs bring this action seeking declarative relief to recover unpaid minimum and overtime wages, unpaid spread-of-hours pay, misappropriated gratuities, liquidated damages, statutory damages, pre- and post-judgment interest, and attorney's

fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the New York Labor Law ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1337, 29 U.S.C. § 216(b), and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendants as they operate out of and do business in Brooklyn, New York.

## VENUE

5. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 because all acts and omissions related to this action occurred at Fragole, operated by Defendants and located in the Eastern District of New York.

## THE PARTIES

**Plaintiff Uriel Gerardo Lozano**

6. Lozano resides in Queens County, New York.

7. Defendants employed Lozano as a server and bartender from approximately May 2021 through June 30, 2025.

**Plaintiff Sarai Cisneros**

8. Cisneros resides in Kings County, New York.

9. Defendants employed Cisneros as a server and bartender from approximately July 2021 through August 2023.

**Plaintiff Laura Baquero Almeida**

10. Almeida resides in Kings County, New York.

11. Defendants employed Almeida as a server and bartender from approximately October 2019 through September 2025.

**Defendant Fragole On Court Corp. d/b/a Fragole Ristorante**

12. Defendant Fragole On Court Corp. d/b/a Fragole Ristorante ("Fragole") is a New York corporation that owns and operates a restaurant and bar located at 394 Court Street, Brooklyn, New York 11231.

13. Fragole is an "enterprise engaged in commerce" within the meaning of the FLSA.

14. Fragole has employees, including Plaintiffs, engaged in interstate commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

15. In the three years preceding the filing of this Complaint, Fragole had an annual gross volume of sales in excess of $500,000.

16. Upon information and belief, between 2021 and 2025, Defendants employed at least nine employees at Fragole.

17. Fragole is an employer within the meaning of the FLSA and NYLL and employed Plaintiffs.

**Defendant Victor Claudio Wang a/k/a Claudio Wang**

18. Upon information and belief, Defendant Victor Claudio Wang resides in New Jersey and is above eighteen years of age.

19. Defendant Wang is also known as "Claudio Wang." *See* https://nypost.com/2020/12/11/andrew-cuomo-shuts-down-indoor-dining-in-nyc-amid-covid-19-surge/ (last accessed February 4, 2026).

20. Upon information and belief, Wang is a co-owner and manager of Fragole

3

Ristorante. Wang is also listed as the Principal on Fragole's liquor license.

21. Throughout Plaintiffs' employment, Wang held and exercised authority over personnel decisions at Fragole, including the authority to hire and fire employees, set employee wage rates, assign employee duties, set employee work schedules, and maintain employee pay records.

22. For example, Wang hired Plaintiffs, determined Plaintiffs' rate of pay, paid Plaintiffs, and signed Plaintiffs' checks.

23. Wang exercised sufficient control over the operations of Fragole and Plaintiffs' employment to be considered their employer under the FLSA and the NYLL.

**Defendant Victor Navarrette**

24. Upon information and belief, Defendant Victor Navarette currently resides in Mexico and is above eighteen years of age.

25. Navarrette is a co-owner and manager of Fragole Ristorante. *See* "Fuhgeddaboudit Food: Fragole," BROOKLYN NEWS 12, Jul. 1, 2019, https://brooklyn.news12.com/fuhgeddaboudit-food-fragole-40728272 (last accessed February 4, 2026) ("A Brooklyn resident [Victor Navarette] started his career delivering food and is now the proud owner of an Italian restaurant in Carroll Gardens.").

26. Navarrette also had the power and/or authority to hire, fire, demote, promote, discipline, set the wages, direct the work duties, and set the work schedules of employees of Fragole, including but not limited to those of Plaintiffs.

27. For example, together with Wang, Navarette hired Plaintiffs, set Plaintiffs' work schedules, and assigned Plaintiffs' work duties.

28. Navarrette exercised sufficient control over the operations of Fragole and Plaintiffs' employment to be considered their employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

**Plaintiff Uriel Lozano's Hours Worked**

29. From approximately May 2021 through June 2025, Defendants employed Lozano as a server and bartender. Lozano's duties included attending to customers, preparing drinks, bringing food from the kitchen to customers' tables, polishing glassware and silverware, refilling salt and pepper shakers, and cleaning the bar and service stations.

30. Throughout his employment, Lozano worked five days per week. On Monday, Thursday and Sunday, Lozano worked from approximately 4:00 p.m. to 10:00 p.m. or 11:00 p.m.; and Friday and Saturday from approximately 4:00 p.m. to 12:00 a.m. or 12:30 a.m., for a total between thirty-four and thirty-eight hours per week. However, Lozano was regularly required to work past his scheduled shifts on Friday or Saturday because of Fragole's regulars and customers who stayed to drink after the restaurant and kitchen closed.

**Plaintiff Sarai Cisneros' Hours Worked**

31. From approximately July 2021 through August 2023, Defendants employed Cisneros as a server and bartender. Cisneros' duties including attending to customers, preparing drinks, bringing food from the kitchen to customers' tables, polishing glassware and silverware, refilling salt and pepper shakers, and cleaning the bar and service stations.

32. Throughout her employment, Cisneros worked five days per week, Sunday, Wednesday and Thursday from approximately 4:00 p.m. to 10:30 or 11:00 p.m.; Friday from approximately 4:00 p.m. to 12:00 a.m. or 12:30 a.m.; and Saturday from approximately 11:00 a.m. to 11:00 p.m., or 1:00 a.m. Cisneros regularly worked thirty-nine and a half hours and sometimes up to forty-two and a half hours in a workweek.

**Plaintiff Laura Baquero Almeida's Hours Worked**

33.     From approximately October 2019 through September 2025, Defendants employed Almeida as a server and bartender. Almeida's duties including attending to customers, preparing drinks, bringing food from the kitchen to customers' tables, polishing glassware and silverware, refilling salt and pepper shakers, and cleaning the bar and service stations.

34.     Almeida did not work at Fragole from approximately mid-March 2020 to mid-June 2020 due to the COVID-19 pandemic.

35.     Throughout her employment, Almeida worked five days per week, Sunday from approximately 10:30 a.m. to 11:00 p.m.; Monday and Tuesday from approximately 4:00 p.m. to 10:30 p.m. or 11:00 p.m.; and Friday and Saturday from approximately 4:00 p.m. to 12:00 a.m., or 1:00 a.m. Accordingly, Almeida regularly worked between forty-one and a half hours and forty-four and a half hours in a workweek.

36.     When Navarette left for Mexico in approximately October 2024, Defendants began paying Almeida approximately $200 per week, in addition to her tips, for assisting Wang with certain duties previously handled by Navarette, including ordering wines, conducting inventory, communicating with vendors, and performing other miscellaneous tasks.

37.     During this period Almeida continued to work as a server and bartender, and did not have the ability to hire, fire, set employee schedules, or direct the job duties of her coworkers.

**Common Practices at Fragole**

38.     For the duration of their employment, Defendants did not pay Plaintiffs any wages. Plaintiffs Lozano and Cisneros' sole compensation came from tips from customers. Plaintiff Almeida's sole compensation came from customer tips, except from

6

approximately October 2024 through September 2025, when Almeida received tips and an additional $200 per week for assisting Wang with administrative tasks.

39. Defendants paid Plaintiffs' tips weekly, paying a portion of Plaintiffs' tips via check and approximately $400 to $450 each week via direct deposit.

40. In the event Plaintiffs received less than $100 per shift from the tip pool, Defendants supplemented Plaintiffs' tip income to ensure a minimum of $100 per shift.

41. For example, if a Plaintiff received $40 in tips during a shift, Defendants supplemented that amount by an additional $60.

42. Defendants maintained a "tip pool" system where all customer gratuities received per shift were joined together and would be equally shared among the servers, bartender, and Defendants that worked that shift.

43. In other words, for each shift they worked, Defendants Wang and Navarette either took for themselves or directed workers, including Plaintiffs, to allocate to each Defendant a full server share from the tip pool.

44. Defendants Wang and Navarette appear on the tip distribution sheets.

45. For example, the Fragole tip sheet from July 30, 2022 shows that Plaintiffs, who appear on the tip sheet as "Camila" and "Sarai," along with one other Tipped Worker, "Alex," received the same share of the tip pool as Victor Navarette: $197 each, as seen in the image below:

[ Continued ]



46. Defendants did not furnish Plaintiffs with a wage notice at the start of their employment period reflecting their regular and overtime wage rates or that a tip credit was taken against their wages.

47. Defendants did not explain to Plaintiffs that they would take a tip credit against their wages.

48. Throughout their employment, Defendants did not pay Plaintiffs spread-of-hours pay on days when they worked shifts spanning over ten hours.

49. Throughout their employment, Defendants paid Plaintiffs by direct deposit and a check issued by Fragole On Court Corp. without accompanying wage statements

reflecting Plaintiffs' hours worked in the corresponding workweek, hourly wage rate, overtime wage rate, or payroll deductions.

50. Defendants intentionally failed to provide wage notices and statements to Lozano, Cisneros, and Almeida at their time of hire, in violation of the WTPA, which would have permitted Plaintiffs to understand and advocate for their rights to statutory minimum wages.

51. Furthermore, by paying their wages without a wage statement as opposed to WTPA-compliant wage statements, Defendants injured Plaintiffs by failing to pay employer-side payroll taxes, including FICA and social security. This concretely harmed Plaintiffs because Defendants' failures to comply with the requirements of NYLL § 195(3) will, among other things, reduce Plaintiffs' entitlements to future social security benefits.

52. Had Defendants complied with the WTPA by issuing compliant wage notices and wage statements to Plaintiffs, Plaintiffs would have used the wage notices and statements to advocate to rectify Defendants' unlawful wage payment practices.

53. Defendants' WTPA violations led to and formed part of Defendants' scheme to deprive Lozano, Cisneros, and Almeida of their minimum and overtime wages due as alleged in this Complaint.

## FIRST CLAIM
### (FLSA – Unpaid Minimum Wages)

54. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

55. The FLSA requires that employers pay employees a minimum wage for all hours worked weekly up to forty.

56. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 206(a) and employed Plaintiff.

57. The minimum wage provisions set forth in the FLSA, 29 U.S.C. § 201 *et seq.*, and its supporting federal regulations apply to Defendants.

58. Defendants failed to pay Plaintiffs the minimum wages they were entitled under the FLSA.

59. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

60. As a result of Defendants' willful violations of the FLSA, Plaintiffs suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and they are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorney's fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (NYLL – Unpaid Minimum Wages)

61. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

62. The NYLL and its supporting New York State Department of Labor ("NYDOL") regulations require employers to pay employees at least the minimum wage rate for the first forty hours worked in a workweek. *See* N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146–1.2(a)(1)(i).

63. The minimum wage provisions of Article 19 of the NYLL and the supporting NYDOL Regulations apply to Defendants.

64. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs' minimum hourly wages.

65. As a result of Defendants' violations of the NYLL, Plaintiffs are entitled to recover their unpaid wages, liquidated damages, pre- and post-judgment interest, and

reasonable attorney's fees and costs of the action.

### THIRD CLAIM
### (FLSA – Unpaid Overtime Wages)

66. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

67. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs.

68. Defendants were required to pay Plaintiffs one and one-half (1½) times greater of their regular hourly wage rate or at least the minimum wage for all hours worked over forty per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq*.

69. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the FLSA.

70. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

71. As a result of Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

### FOURTH CLAIM
### (NYLL – Unpaid Overtime Wages)

72. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

73. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), and supporting NYDOL regulations, including but not limited to 12 N.Y.C.R.R. Part 146, and employed Plaintiffs.

74. Under the NYLL and supporting NYDOL regulations, Defendants were required to pay Plaintiffs one and one-half (1½) times their regular hourly wage rate for all hours worked over forty per workweek.

75. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the NYLL.

76. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

77. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## FIFTH CLAIM
### (NYLL – Spread-of-Hours Pay)

78. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

79. Defendants willfully failed to pay Plaintiffs additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked shifts spanning over ten hours, in violation of the NYLL and its supporting NYDOL regulations, including 12 NYCRR § 146–1.6.

80. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

## SIXTH CLAIM
### (NYLL, WTPA – Failure to Provide Accurate Wage Statements)

81. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

82. The NYLL and the WTPA require employers to provide employees with an accurate wage statement each time they are paid.

83. Defendants' failure to comply with NYLL § 195(3) goes beyond technical violations. It is directly intertwined with and facilitated Defendants' practice and policy of not paying Plaintiffs' any wages.

84. As part of their general practice and policy, Defendants paid Plaintiffs in a check and through direct deposit without a pay stub that reflected their hours worked per workweek, their regular rates due, and overtime rates, thereby preventing Plaintiffs from knowing whether they received all pay at the correct wage rates due for all hours worked per workweek. Defendants did this on purpose to conceal from Plaintiffs that they were supposed to receive a regular hourly rate, overtime pay, spread-of-hours pay, and allowances. Had Defendants complied with the requirements of NYLL § 195(3), Plaintiffs would have known that they were supposed to receive, and would have received or complained about not receiving, minimum wages, overtime wages, spread-of-hours pay, and tips.

85. By concealing this information, Defendants avoided paying Plaintiffs their minimum wages, overtime wages, spread-of-hours pay, and all tips they were entitled to as alleged in this Complaint.

86. Furthermore, by paying their wages in a check or direct deposit, without a WTPA-compliant wage statement and tax deductions, Defendants injured Plaintiffs by failing to pay employer-side payroll taxes, including FICA and social security. This concretely harmed Plaintiffs because Defendants' failure to comply with the requirements of NYLL § 195(3) and will, among other things, reduce their entitlement to future social security benefits.

87. As a result of Defendants' violations of NYLL § 195(3), Plaintiffs are entitled to recover statutory damages and reasonable attorney's fees and costs of the action, pursuant to NYLL § 198(1–d).

## SEVENTH CLAIM
### (NYLL, WTPA – Failure to Provide Wage Notices)

88. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

89. The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay. *See, e.g.,* 12 N.Y.C.R.R. Part 146.

90. In violation of NYLL § 195(1), Defendants failed to furnish Plaintiffs at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

91. Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants statutory damages and their reasonable attorney's fees and costs incurred in this action pursuant to the NYLL § 198(1–b).

### EIGHTH CLAIM
### (FLSA – Misappropriation of Tips by Employer)

92. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

93. 29 U.S.C. § 203(m)(2)(B) prohibits employers from keeping "tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

94. Plaintiffs were "employees" within the meaning of section 203 of the FLSA.

95. Defendants are "employers" within the meaning of section 203 of the FLSA.

96. Defendants unlawfully retained Plaintiffs' tips earned, which customers left for them, throughout his employment.

97. Defendants' FLSA violations have caused and proximately caused Plaintiffs to suffer damages.

98. Plaintiffs are entitled to recover from Defendants all available damages, including their unpaid tips, liquidated damages, and attorney's fees and costs of the action pursuant to the FLSA.

### NINTH CLAIM
### (NYLL – Misappropriation of Tips by Employer)

99. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

100. NYLL § 196-d prohibits any "employer or his agent or an officer or agent of any corporation" from "demanding or accepting, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

101. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652 and supporting NYDOL regulations and employed Plaintiffs.

102. The NYLL and its supporting regulations prohibit employers from retaining, indirectly or directly, any tips earned by employees. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs their tips earned.

103. As a result of Defendants' violations of the NYLL, Plaintiffs are entitled to recover their unpaid tips, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

  a. declaring that Defendants violated the minimum wage and overtime provisions of the FLSA, the NYLL, and WTPA regulations;

  b. declaring that Defendants violated the spread-of-hours pay provisions of the NYLL;

  c. declaring that Defendants violated the notice and record-keeping provisions of the FLSA, NYLL, and WTPA;

  d. declaring that Defendants unlawfully misappropriated tips owed to Plaintiffs in violation of the FLSA and NYLL;

  e. declaring that Defendants' violations of the FLSA and the NYLL were willful;

  f. enjoining and permanently restraining Defendants from further violations of the FLSA and NYLL;

  g. awarding Plaintiffs damages for unpaid minimum and overtime wages under the FLSA and NYLL;

  h. awarding Plaintiffs damages for unpaid spread-of-hours pay under the NYLL;

  i. awarding Plaintiffs damages equal to Plaintiffs' misappropriated tips under the FLSA and NYLL;

  j. awarding Plaintiffs liquidated damages pursuant to the FLSA and NYLL;

  k. awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish them with a notice at the time of hiring, in violation of the WTPA;

  l. awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish Plaintiffs with accurate wage statements pursuant to the WTPA;

  m. awarding Plaintiffs pre- and post-judgment interest under the FLSA and the NYLL;

  n. awarding Plaintiffs reasonable attorney's fees and costs pursuant to the FLSA and the NYLL; and

  o. awarding such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
   February 4, 2026

               PECHMAN LAW GROUP PLLC

            By: _____
               Louis Pechman
               Georgia Decker
               Miguel Tapia Colin*
               Pechman Law Group PLLC
               488 Madison Avenue - 17th Floor
               New York, New York 10022
               (212) 583-9500
               pechman@pechmanlaw.com
               decker@pechmanlaw.com
               tapiacolin@pechmanlaw.com

               *Attorneys for Plaintiff*

               *Forthcoming application to E.D.N.Y.